UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LESLIE RIVERA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Action No. 14-30095-MGM |
| v. | * | |
| | * | |
| U.S. TSUBAKI, INC., | * | |
| | * | |
| Defendant | * | |

MEMORANDUM AND ORDER ON

DEFENDANT'S MOTION TO DISMISS

(Dkt. No. 6)

February 5, 2015

MASTROIANNI, U.S.D.J.

## I.   INTRODUCTION

Plaintiff, Leslie Rivera, filed a two-count complaint in state court alleging Defendant, U.S. Tsubaki, Inc., her former employer discriminated and retaliated against her on the basis of her gender or sexual orientation in violation of MASS. GEN. LAWS ch. 151B.  Defendant, an Illinois corporation with its principal place of business in Illinois, removed the case from state court pursuant to 28 U.S.C. § 1441, asserting this court has original jurisdiction in the action under 28 U.S.C. § 1332.[1] Less than two weeks after removing this action to federal court, Defendant filed a Motion to Dismiss (Dkt. No. 6). For the following reasons, that motion will be denied.

---

[1] Plaintiff was a resident of Cidra, Puerto Rico when she filed her original complaint (Dkt. No. 1-1), but as of August 28, 2014, the date she filed her First Amended Complaint (Dkt. No. 16), she was a resident of Springfield, Massachusetts.

## II.     FACTUAL BACKGROUND[2]

On July 9, 2001, Defendant hired Plaintiff as a Guide Assembler. (Dkt. No. 16, First Amended Complaint (hereinafter F.A.C.) ¶ 3.) She became a member of the United Steel Workers of America, Local 7912 Union (the "Union") and the terms of her employment were governed by a collective bargaining agreement (the "CBA"). (F.A.C. ¶¶ 4, 9.) In September 2001 she was promoted to the position of Group Leader. (F.A.C. ¶ 4.) At the time of her promotion, Group Leader was a labor grade six; in May 2007 the position was changed to a labor grade seven. (F.A.C. ¶¶ 4-5.)

### A.     Plaintiff's First MCAD Complaint

In November 2008, following her April 2008 marriage to her spouse, Marilyn Kent, Plaintiff requested Defendant add her spouse to her health insurance policy. (F.A.C. ¶¶ 7.) The request was initially granted, but, approximately six months later, Plaintiff was informed that her spouse would no longer receive health insurance benefits because individuals at Defendant's corporate headquarters in Illinois had decided not to provide benefits to same-sex spouses. (F.A.C. ¶ 8.) Plaintiff filed a grievance with the Union, asserting Defendant's action violated Article Thirty-Three of the CBA.[3] (F.A.C. ¶ 10.) The Union forwarded the grievance to arbitration. (F.A.C. ¶ 12.) Several weeks later, on or about June 30, 2009, Plaintiff filed a complaint against Defendant with the

---

[2] For purposes of deciding Defendant's Motion to Dismiss, the court "accept[s] as true all well-pleaded facts set out in the complaint and indulge[s] all reasonable inferences in favor of the pleader." S.E.C. v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010). Having granted Plaintiff leave to file an Amended Complaint, the court cites to the factual allegations set forth in Plaintiff's First Amended Complaint.

[3] Article Thirty-Three, provides, in its entirety:

> [Defendant] and the Union hereby affirm their intention that the provisions of this Agreement will be applied equally to all employees without discrimination because of their race, color, religion, sex, age, national origin, disability, veteran status, sexual orientation or union affiliation. Without waiving any rights under the Agreement, the parties recognize the requirements of the Americans with Disabilities Act to make reasonable accommodations for disabled employees. Nothing in this Agreement shall be construed to prevent either party from complying with that Act or raising any argument they have under this Agreement with respect to the application of that Act.

(Dkt. No. 13-1, CBA, Ex. A to Pl.'s Opp. to Def.'s Mot. to Dismiss 24.)

Massachusetts Commission Against Discrimination ("MCAD"), alleging discrimination based on her sexual orientation. (F.A.C. ¶ 11.)

The arbitrator found that Defendant's decision not to provide health benefits to Plaintiff's spouse had violated the CBA's non-discrimination clause. Defendant was ordered to restore coverage to Plaintiff's spouse and to compensate Plaintiff for any covered costs incurred as a result of the denial of health insurance benefits. (F.A.C. ¶ 12.) When Defendant reinstated Plaintiff's spouse's health insurance coverage, it charged Plaintiff more for the coverage than it charged employees with opposite-sex spouses. (F.A.C. ¶ 13.)

In October 2011, MCAD issued a finding of probable cause against Defendant, having found the denial of spousal health insurance benefits was directly related to Plaintiff's sexual orientation. (F.A.C. ¶ 14.) Six months later, MCAD entered an order allowing for post-determination discovery. (F.A.C. ¶ 22.) About two weeks later, Defendant sent Plaintiff correspondence stating a "system error" had caused Plaintiff to be overcharged for medical benefits during 2011 and 2012. (F.A.C. ¶ 23.) Defendant later sought to enjoin MCAD from adjudicating the discrimination claim. (F.A.C. ¶ 31.) In 2013 the parties agreed to a stipulation of dismissal in that case, with Plaintiff reserving her right to file this action. (F.A.C. ¶ 33.)

B. Plaintiff's Discrimination, Harassment, and Retaliation Claims

Around October 2011, when MCAD issued its finding of probable cause, Plaintiff began applying for other positions within Defendant. (F.A.C. ¶ 16.) Article Eight of the CBA, entitled Job Posting (Bidding), provided that open positions in Grades 6-12 were to be awarded "to the qualified applicant with the greatest seniority" and a process for identifying qualified applicants was to be developed by Defendant and the Union pursuant to a referenced Letter of Understanding.[4] (Dkt.

---

[4] Defendant represented that Article Eight "contains an extensive, detailed and mandatory procedure and criteria for selecting candidates," but, aside from noting the commitment of Defendant and the Union to develop a procedure for

No. 13-1, CBA, Ex. A to Pl.'s Opp. to Def.'s Mot. to Dismiss 7.) Consistent with the process developed by Defendant and the Union, Defendant used a Job Posting Evaluation Chart (the "Chart") to fill certain positions.[5] (F.A.C. ¶ 17.) Points are recorded on the Chart in eight categories and the applicant with the most points is to be awarded the position.[6] (F.A.C. ¶ 18.) Plaintiff asserts that when she applied for open positions she was not always assigned the correct number of points on the Chart to reflect her current labor grade, attendance, or years of service. (F.A.C. ¶ 19.) These errors caused her to be passed over for open positions when, had her points been correctly calculated, she would have been the applicant with the most points. (F.A.C. ¶ 20.) Plaintiff also alleges Defendant subjected her to harassment, in the form of unfair micromanagement, excessive work assignments, and lack of communication. (F.A.C. ¶ 21.)

    C.    Plaintiff's Complaints to Union and Defendant

Plaintiff repeatedly complained to Defendant's Human Resources ("HR") department staff about issues of discrimination, harassment, and retaliation related to her MCAD complaint and her sexual orientation. (F.A.C. ¶ 24.) Additionally, Plaintiff discussed her concerns about the discrimination, harassment, and retaliation she was experiencing and the miscalculation of her points on the Chart with the Union President and Defendant's HR staff within the period of time allowed under the CBA's Complaint Grievance and Arbitration Procedure. (F.A.C. ¶¶ 26-27.) She did not receive responses from either the Union President or the HR department. (F.A.C. ¶ 27-28.) The discrimination and harassment continued until Plaintiff was constructively discharged on August 3, 2012. (F.A.C. ¶ 29.)

---

identifying qualified applicants, Article Eight is silent as to the procedure and criteria, other than seniority, that will be used to select candidates. (Dkt. No. 6-1, Def.'s Memorandum in Support of Defendant's Motion to Dismiss 3.)

[5] The court understands the Chart to manifest the process for determining qualifications agreed to by the Union and Defendant that is referenced in Article Eight of the CBA.

[6] Defendant concedes the Chart was used to select a candidate when more than one qualified candidate applied for an open position. (Dkt. No. 6-1, Def.'s Memorandum in Support of Defendant's Motion to Dismiss 3.)

### III.  THE CBA

Several portions of the CBA inform Defendant's claims in its Motion to Dismiss. The court reviews these as it finds it necessary to familiarize itself with the document in the course of reaching its decision.[7]

  A.  <u>Article Eight – Job Posting (Bidding)</u>

Article Eight provides that open "[p]ositions within labor grades 6 ~ 12 will be awarded to the qualified applicant with the greatest seniority." Additionally, Article Eight states: "[Defendant] and the Union have agreed to develop a process to determine the qualifications of applicants for posted positions. (See Letter of Understanding – Job Posting)[.]" (Dkt. No. 13-1, CBA, Ex. A to Pl.'s Opp. to Def.'s Mot. to Dismiss 7-8.)

  B.  <u>Article Seven – Seniority</u>

Article Seven provides that "[s]eniority is defined as an employee's length of continuous service with [Defendant] . . . ." (Dkt. No. 13-1, CBA, Ex. A to Pl.'s Opp. to Def.'s Mot. to Dismiss 6.)

  C.  <u>Article Thirty-One – Complaint, Grievance, and Arbitration Procedure</u>

Article Thirty-One sets forth a multi-step process for pursuing a complaint through to a grievance process and then to arbitration. (Dkt. No. 13-1, CBA, Ex. A to Pl.'s Opp. to Def.'s Mot. to Dismiss 22-23.) At step one, employees are required to bring complaints to their supervisor or Human Resources within twenty days and Defendant is required to respond orally within two days. (<u>Id.</u>) If the Defendant's response is "considered unacceptable," the second step provides for the

---

[7] "Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." <u>Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 267 F.3d 30, 33 (1st Cir. 2001). "However, courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." <u>Watterson v. Page</u>, 987 F.2d 1, 3 (1st Cir. 1993). Since Plaintiff has relied on the CBA in framing her First Amended Complaint, the court treats the CBA as "part of the pleadings." <u>Id.</u>

conversion of a complaint into a grievance when it is reduced to writing and advanced by the union within five days of Defendant's oral response at the first step. (Id.) Defendant is required to respond in writing. (Id.) A grievance can then be advanced to a third step if "(1) it is considered plant wide in nature, (2) it is a disputed discharge, or (3) it is mutually agreed upon by [Defendant] and Union." (Id.) At the third step a meeting is held and Defendant must provide a written answer within seven days. (Id.) Finally, the Union has thirty days from the due date of Defendant's written answer to request arbitration. (Id.)

The Complaint, Grievance, and Arbitration Procedure also provides for time limits and waiver as follows:

> Time Limits – Time is of the essence in handling grievances, and all time limits shall be strictly maintained unless the parties mutually agree to the waiver of time limits in a particular case. Thus, a grievance not timely raised or appealed shall be deemed waived and settled as of the last answer, and a grievance not answered by [Defendant] at any step shall be deemed to be timely denied and is immediately appealable to the next step.
>
> Waiver – Since [Defendant] has granted the employees a grievance and arbitration procedure for resolving disputes, the Union and the employees waive their rights to pursue any judicial or agency remedy against [Defendant] as to any matter subject to the procedures established in this Article until such procedures have been exhausted.

(Id.)

## IV.    PROCEDURAL BACKGROUND

Plaintiff filed her complaint in state court on April 9, 2014, alleging Defendant treated her in a discriminatory manner, due to Plaintiff's sexual orientation in violation of MASS. GEN. LAWS ch. 151B. Defendant removed the complaint to federal court on May 28, 2014. On June 6, 2014, Defendant filed its Motion to Dismiss. Defendant contended (1) the applicable CBA contained a clear and unmistakable waiver of Plaintiff's right to a judicial remedy for her discrimination claims and (2) Plaintiff's failure to promote claim is intertwined with the CBA and is therefore barred by

"complete preemption" pursuant to § 301 of the Labor Relations Management Act ("LRMA").[8] The court considers each of these arguments in turn.[9] As the content of the pleadings (including the CBA) are sufficient to allow the court to reach its decision, it declines Plaintiff's invitation to convert this motion to one for summary judgment.

## V.     DISCUSSION

A.     <u>Waiver</u>

Defendant argues Plaintiff was required to exhaust the grievance and arbitration remedies set forth in the CBA before bringing this suit and her failure to exhaust the remedies provided in the CBA bars Plaintiff from pursuing her claims in a judicial forum. Plaintiff contends the language of the CBA did not create an enforceable waiver of her right to pursue a judicial remedy for alleged violations of a state antidiscrimination statute. In order to be enforceable, any waiver of judicial remedies for the violation of statutory rights, must be "'clear and unmistakable' on its face." <u>Manning v. Boston Medical Center Corp.</u>, 725 F.3d 34, 52 (2013). A waiver is "clear and unmistakable" if it incorporates a reference to the specific statutory provision being waived. <u>Id.</u> at 53. "A broadly-worded arbitration clause such as one covering 'any dispute concerning or arising out of the terms and/or conditions of [the CBA], or dispute involving the interpretation or application of [the CBA]' will not suffice; rather, something closer to specific enumeration of the statutory claims to be arbitrated is required." <u>Cavallaro v. UMass Mem'l Healthcare, Inc.</u>, 678 F.3d 1, 7 (1st Cir. 2012). The CBA applicable to Plaintiff does not contain a "clear and unmistakable" waiver of any statutory right.

---

[8] In its memoranda, Defendant also argued for dismissal on a third theory – that Plaintiff's factual allegations in the complaint were insufficient to state a claim on which relief can be granted. Defendant withdrew this argument in open court following the court's allowance of Plaintiff's Motion for Leave of Court to Amend Complaint and Jury Demand.
[9] As an alternative to her arguments opposing the substance of Defendant's Motion to Dismiss, Plaintiff argued Defendant's motion is procedurally improper because it raises matters beyond the scope of the pleadings. As the content of the pleadings (including the CBA) are sufficient to allow the court to reach its decision, it declines Plaintiffs invitation to convert this motion to one for summary judgment.

Article Thirty-Three establishes a contractual agreement through which Defendant promises not to apply the CBA in a discriminatory manner, but this contractual agreement is separate from, and does not supersede, Plaintiff's statutory rights to be free from workplace discrimination. See Navarro v. U.S. Tsubaki, Inc., 577 F. Supp. 2d 487, 500 (D. Mass. 2008) (citing Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06 (1988)). The portion of the CBA through which employees agree to waive their right to pursue judicial remedies until after they have exhausted grievance and arbitration procedures is embedded within Article Thirty-One. In Article Thirty-One, a grievance is defined simply as a difference of opinion or dispute between Defendant and its employees or the Union "involving the interpretation and/or application of any terms of" the CBA, without reference to statutory rights. (Dkt. No. 6-7, CBA Art. 33, Ex. 6 to Def.'s Mot. to Dismiss.) This language falls short of establishing a "clear and unmistakable" waiver of any statutory antidiscrimination rights.

B.    Preemption

Plaintiff's First Amended Complaint, like her original complaint filed in state court, includes two counts, both alleging violations of Massachusetts state laws barring certain types of discrimination and retaliation against those who have sought redress for discrimination. MASS. GEN. LAWS ch. 151B. Defendant argues these claims should be dismissed because they are preempted by federal labor law, specifically § 301 of the Labor Management Relations Act ("§ 301"), 29 U.S.C. § 185(a). Plaintiff argues her state law claims are not preempted because they exist independently of the CBA.

"Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987). The doctrine of complete preemption arises in several substantive areas, including cases where § 301 applies. The plain

language of § 301 grants district courts jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . ." 29 U.S.C. § 185(a). However, in order to fully address the federal policies underlying § 301, the Supreme Court has long held that § 301 does not simply give jurisdiction, but also requires the application of federal substantive law. Textile Workers Union of America v. Lincoln Mills of Ala., 353 U.S. 448 (1957). Thus, § 301 not only provides a district court with jurisdiction over a case involving a CBA, though the court would otherwise lack jurisdiction, but also can require dismissal of a complaint to which § 301 applies. O'Donnell v. Boggs, 611 F.3d 50, 53 (1st Cir. 2010) (citations omitted). In this case, the court has jurisdiction based on the diversity of the parties and does not need to determine whether § 301 and the doctrine of complete preemption grant jurisdiction. However, the court still must determine whether § 301 complete preemption requires dismissal. Unfortunately, determining whether § 301 requires dismissal is, as the First Circuit has noted, the more complicated of the two tasks. Cavallaro, 678 F.3d at 4 ("As we will see, the complete preemption concept has a core meaning which suffices to establish jurisdiction over the case in the district court, although the concept's full present contours pose uncertainties that complicate the disposition of the claims once in federal court.")

"[S]tate law claims are preempted under [§] 301 if they 'require construing the collective-bargaining agreement' because of the congressional interest in uniform interpretation of collective bargaining agreements." O'Donnell, 611 F.3d at 54 (quoting Lingle, 486 U.S. at 407). This standard is met where "the asserted state-law claim plausibly can be said to depend upon the meaning of one or more provisions within the collective bargaining agreement." Flibotte v. Pennsylvania Truck Lines, 131 F.3d 21, 26 (1st Cir. 1997). There are two types of claims that can "'depend' on the 'meaning' of a collective bargaining agreement." Id. First, a claim alleging breach of a duty arising under a collective bargaining agreement and second, a claim "if it 'plausibly can be said to depend

9

upon the meaning of' or 'arguably hinges upon an interpretation of' the CBA." Cavallaro, 678 F.3d at 8 (quoting Flibotte, 131 F.3d at 26).

The CBA includes an anti-discrimination provision, but Plaintiff is not seeking to vindicate her right to be free of discrimination arising under the CBA. Rather, Plaintiff seeks to vindicate her rights arising under state law. Her claims are, therefore, only subject to complete preemption under § 301 if there is a plausible argument that the resolution of her claims will depend on the meaning of the CBA or hinge on an interpretation of the CBA.

Plaintiff has based her claims on two sets of factual allegations. The first set of factual allegations has to do with Defendant's failure to award other jobs to Plaintiff. The second set of factual allegations involves assertions Plaintiff was targeted for micromanagement and overloaded with work. Defendant has not asserted that resolution of this second set of factual allegations could depend on the meaning of a provision of the CBA, nor does the court see such a connection. The first set of factual allegations, however, poses a closer question.

Though "statutorily prohibited discrimination cannot be rendered permissible under any proper interpretation of a CBA[,]" Plaintiff's assertion that she was denied promotions due to discrimination implicates specific portions of the CBA. Navarro, 577 F. Supp. 2d at 500 (citing Lingle, 486 U.S. at 407). The question is whether the meaning of the CBA must be interpreted to resolve Plaintiff's claim, or whether it need only be "consulted." Livadas v. Bradshaw, 512 U.S. 107, 124 (1994) ("[T]he bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."). Article Eight of the CBA addresses the process for filling open positions, stating "[p]ositions within labor grades 6 ~ 12 will be awarded to the qualified applicant with the greatest seniority" and continues to provide that "[Defendant] and the Union have agreed to develop a process to determine the qualifications of applicants for posted positions." Nothing more about this "process to determine the qualifications

of applicants" is provided in the CBA. Thus, the CBA does not explain the Chart allegedly used to determine who, among a group of current employees, will be awarded a particular open position.

The potential utility of the CBA to resolve Plaintiff's claim is, therefore, clearly limited. This case is not one that "will require construing and applying the various 'peculiarities of industry-specific wage and benefit structures' in the CBA . . .." Cavallaro, 678 F.3d at 8; see also Rueli v. Baystate Health, Inc., No. 14-10319, 2015 WL 132662, at *3 (D. Mass. Jan. 9, 2015). Indeed, the only relevance the CBA appears to have is that it establishes the right of the "qualified applicant with the greatest seniority" to open positions and states that Defendant and Union have agreed to create a "process to determine the qualifications of applicants." This language cannot be construed or applied to determine whether any particular person is a qualified applicant (let alone the most senior qualified applicant), because the CBA merely states that a process will be created; such process details are not "embodied" in the CBA. See Cavallaro, 678 F.3d at 8. The reference in the CBA to the creation of a future process fails to establish any actual process exists, or is specifically incorporated, in the CBA. The basis of Plaintiff's failure to promote claim is her assertion that there was a process and that it was applied differently to her than to others; as the CBA does not detail the process, her claim neither plausibly depends nor arguably hinges upon language within the CBA.

## VI. CONCLUSION

For the Foregoing reasons, Defendant's Motion to Dismiss is hereby DENIED.

It is So Ordered.

        /s/ Mark G. Mastroianni
        MARK G. MASTROIANNI
        United States District Judge